823 F.2d 549
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
W. Michael LOVERN, Defendant-Appellant.
 No. 86-5673
 United States Court of Appeals, Fourth Circuit.
 Argued April 9, 1987.
Decided July 1, 1987.
 
 Louis Withers Kershner for appellant.
 William Graham Otis, Assistant United States Attorney (Henry E. Hudson, United States Attorney, on brief), for appellee.
 Before HALL, SPROUSE and WILKINSON, Circuit Judges.
 PER CURIAM:
 
 
 1
 W. Michael Lovern appeals from the district court's order revoking his probation. Lovern contends that the district court's bias at his probation hearing denied him due process. He also contends that the district court abused its discretion in revoking his probation.[1] Finding no merit to either contention, we affirm.
 
 
 2
 In 1982, a jury convicted Lovern of aiding and abetting the making of a false entry in bank records, in violation of 18 U.S.C. Secs. 2 and 1005. The court sentenced him to three years in prison, which it then suspended in favor of five years probation.[2]
 
 
 3
 In July 1986, Lovern's probation officer filed a 'petition for probation action' and requested a probation revocation hearing. He charged Lovern with numerous probation violations, i.e., (1) having no job, (2) leaving the jurisdiction without permission, (3) failing to notify the probation officer of his address, (4) ignoring instructions concerning the filing of monthly reports, (5) failing to file monthly reports, (6) verbally threatening an FBI agent, and (7) falsely representing that he was employed by named employers.
 
 
 4
 The district court held a revocation hearing in November 1986. Lovern was represented by counsel and pleaded guilty to charges one, three and five. After hearing arguments and testimony, the district court concluded that Lovern had also violated charges six and seven.[3] The court then revoked Lovern's probation and sentenced him to the original three-year prison term. It also ordered the Bureau of Prisons to examine him and report to the court within three months, at which time the court would decide whether to require Lovern to serve the originally imposed sentence, modify the sentence, or place him again on probation.
 
 
 5
 On appeal, Lovern contends that the district judge's bias during the probation revocation hearing violated his right to due process, i.e., his right to a hearing before a neutral factfinder. He also contends that the district court abused its discretion in revoking his probation because there was insufficient evidence to justify revocation. We disagree with both contentions.
 
 
 6
 Probationers, of course, are entitled to procedural safeguards, including a hearing before a neutral factfinder, before their probation can be revoked. See Black v. Romano, 105 S. Ct. 2254, 2258 (1985); see generally Gagnon v. Scarpelli, 411 U.S. 778 (1972); Fed. R. Crim. P. 32.1(b)(2). To support his position that the district judge was biased, Lovern cites a number of comments made by the judge during the revocation hearing. Reading those comments in the context of the entire transcript, however, we find no evidence of bias. In addition, we note that during the hearing Lovern never objected to any of these allegedly biased comments.[4]
 
 
 7
 The district court has broad discretion to revoke probation if its conditions are violated. See United States v. Cates, 402 F.2d 473, 474 (4th Cir. 1968); see also United States v. Young, 756 U.S. 64, 65 (8th Cir. 1985). Moreover, the court 'need only be reasonably satisfied that a probationer has violated the terms of his release.' Cates, 402 F.2d at 474. Lovern argues nonetheless that there was not sufficient evidence to justify revoking his probation. He admitted, however, violating a number of the terms of his probation. FBI agent Dean testified concerning Lovern's threat against him.[5] In addition, his probation officer testified that Lovern had falsely represented that he was employed. While the seriousness of these violations varies, we cannot say the district court abused its discretion in deciding that they provided sufficient grounds on which to revoke probation.
 
 
 8
 In view of the above, the judgment of the district court is affirmed.
 
 
 9
 AFFIRMED.
 
 
 
 [1]
 Lovern further contends that the district court erred in refusing to release him on bail pending appeal. We need not address this contention, however, because this court has already affirmed the district court's action on this matter in an order dated December 17, 1986
 
 
 [2]
 The jury also convicted Lovern of aiding and abetting a misapplication of bank funds, in violation of 18 U.S.C. Secs. 2 and 656, and of conspiring to misapply bank funds and to make a false entry in bank records, in violation of 18 U.S.C. Sec. 371. The court sentenced him to five years probation on both counts, to run concurrently with his initial five-year term of probation
 
 
 [3]
 The evidence supporting charge six (verbally threatening an FBI agent) consisted of the testimony of FBI agent Robert C. Dean. Dean testified that Lovern called him on the telephone, became abusive when Dean attempted to end the conversation, and told Dean 'that he was going to kick my ass or tear my ass apart.' According to Dean, he then asked Lovern if that was a threat, Lovern replied that it was and repeated the statement
 
 
 [4]
 Lovern also asks us to order the district judge to recuse himself from presiding over any further proceedings involving Lovern's judicial supervision. Having decided, however, that there was no evidence of bias on behalf of the district court, we will not consider this request
 
 
 [5]
 Lovern contends that Dean's testimony was contradicted by a tape recording Lovern made of their conversation. According to the tape, Lovern merely told Dean that 'I'm going to take your as apart at the courtroom.' This recording, however, was introduced into evidence at the hearing by the government, over Lovern's objection, with the objective of showing that Lovern had 'doctored' the tape. Although the FBI's laboratory report was inconclusive (it stated only that the tape had probably been spliced together), it was certainly within the district court's discretion to find the FBI agent's testimony more credible than Lovern's tape recording